**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

RAFAEL LOPEZ,                                )                Civil No.: 2:11-cv-05169 (JLL)
                                             )
      Petitioner,                   )                **OPINION**
                                             )
      v.                            )
                                             )
COMMISSIONER OF SOCIAL                       )
SECURITY,                                    )
                                             )
      Respondent.                   )
_____)

**LINARES**, District Judge.

      Presently before the Court is Plaintiff Rafael Lopez's Appeal seeking review of a final determination by Administrative Law Judge ("ALJ") Donna A. Krappa denying his application for Supplemental Security Income Benefits ("SSI") in part. The Court has jurisdiction to review this matter pursuant to 24 U.S.C. § 405(g). The Court has considered the submissions made in support of and in opposition to the instant appeal and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court finds the ALJ's step two and step four analysis was supported by substantial evidence. The Court, however, remands for the ALJ to properly compare the Plaintiff's severe impairments with the Listings to determine medical equivalence at step three.

I.      STATEMENT OF THE CASE

      A.  Facts and Procedural Background

      Plaintiff, Rafael Lopez, was born in Cuba on October 29, 1953. R. 67, 189. [i] Plaintiff was 51 years old at the alleged onset of disability, February 17, 2005. Plaintiff went to college for two years in Cuba and indicated in his disability report that he spoke, read, and understood English. Id. at 60, 546. Plaintiff worked as a loader in a fish market from 1992 through 1994. Id. at 61-62. As a loader, Plaintiff frequently lifted fifty pounds or more and had to carry 60-140 pounds of fish daily with another individual. Id. at 62. Plaintiff additionally worked in general construction where he was required to lift over fifty pounds. Id. at 552.

      Plaintiff alleges disability on the basis of cancer, hernias, low back pain, asthma, and depression. Id. at 61, 186, 196. On February 17, 2005, Plaintiff filed for SSI, alleging disability beginning on that date. Id. at 12. His claim was initially denied on September 1, 2005, and upon reconsideration on May 3, 2006. Id. Thereafter, Plaintiff filed a timely

written request for hearing, which took place before the ALJ on November 6, 2007.  Id. at 12, 181.  On December 21, 2007, the ALJ found that Plaintiff was not disabled under 1614(a)(3)(A) of the Social Security Act.  Id. at 13.  Plaintiff requested review by the Appeals Council, which was denied.  Id.  at 4.  Plaintiff appealed to the U.S. District Court for the District of New Jersey, and on February 5, 2009, the Honorable Joseph A. Greenaway, Jr. signed a Consent Order to remand the case for further administrative action, including testimony of a vocational expert ("VE").  Id. at 245-46.   On April 24, 2009, the Appeals Council remanded the case and ordered that upon remand, the ALJ would obtain additional evidence from available treating sources; give further consideration to Plaintiff's maximum residential functional capacity (RFC); and obtain evidence from a VE to clarify the effect of the assessed limitations on Plaintiff's occupational base.  Id. 249-50.

On October 21, 2009, a supplemental hearing took place before the ALJ where Plaintiff appeared with a VE and a Spanish-language interpreter.  Id. at 521.  On October 27, 2010, the ALJ issued a partially favorable decision, finding that Plaintiff was disabled under the Act as of November 1, 2009, but not prior to that date.  Id. at 236.  Plaintiff requested review by the Appeals Council, which was deemed untimely.  However, the Appeals Council granted Plaintiff 30 days time to file a new civil action.  The District Court action was thereafter timely commenced and the matter is now before the court.

B.  Medical Evidence for the Relevant Time Period

On July, 13, 2005, Plaintiff underwent an internal examination with physician William Lathan, M.D.  Id. at 135.  Plaintiff reported a history of inguinal hernias and bronchial asthma.  Id.  Plaintiff had three surgeries to repair a left inguinal hernia in 1984, 1992, and 1994 as well as the repair of a right-sided hernia in March of 2005.  Id.  Plaintiff also had an allegedly cancerous lesion excised from his right chest wall in 1972 and on his lateral left hip in 1994.  Id.  Plaintiff informed Dr. Lathan that he could perform all activities related to personal care while his spouse performed other household duties.  Id. at 135-36.  Physical examination revealed no abnormalities:  Plaintiff appeared to have no acute distress; his gait was normal; he could walk on his heels and toes without difficulty; he could perform a full squat; and he needed no assistance changing for the exam, getting on and off the exam table, and could rise from his chair without difficulty.  Id. at 136.  However, Dr. Lathan assessed plaintiff to have a moderate restriction for bending, lifting, carrying, pushing and pulling.  Id. at 138.

In a letter dated January 17, 2006, Dr. Rodolf Colaco reported he saw Plaintiff at the Surgical Clinic of Trinitas Hospital on January 25, 2005.  On June 16, 2005, Dr. Colaco averred that plaintiff had a medical history for a tumor removed in the left gluteal and for a right inguinal herniorraphy that was performed twice in the past.  Id. at 157.  Dr. Colaco also noted that on March 1, 2005, Plaintiff underwent repair for a left inguinal hernia.  Id.

On August 4, 2005, Dr. Elizer Lim completed a functional assessment at the request of the Commissioner.  Dr. Lim had treated plaintiff three times prior to this assessment for headaches beginning on January 7, 2005.  Id.  On this visit, Dr. Lim noted that Plaintiff had progressive headaches with pulsating in the right temporal area, no nausea or vomiting, and no seizures.  Id.  Dr. Lim also found that Plaintiff did not display any behavior suggestive of a significant psychiatric disorder.  Id. at 140.  Dr. Lim indicated that Plaintiff underwent a magnetic resonance imaging (MRI) of his head on August 1, 2005, that was normal.  Id.  As indicated in Dr. Lim's assessment, Plaintiff had no limitations for standing and/or walking, lifting and carrying, pushing and/or pulling, and sitting.  Id. at 144-45.

2

On November 18, 2005, Plaintiff underwent a psychiatric evaluation and medication monitoring at Trinitas Hospital Department of Behavioral Health and Psychiatry ("Trinitas"). Id. 496. At intake, Plaintiff reported irritability, isolation, feeling overwhelmed, poor sleep, and thoughts of suicide. Id. On mental examination, Plaintiff was cooperative, calm, and affect depressed. Id. at 502. Plaintiff presented no hallucinations or delusions, had normal speech, was fully
oriented with thought process and cognitive function intact; however, plaintiff's memory was recently impaired. Id. at 502-503. Plaintiff's judgment and impulse control were fair. Plaintiff's coping skills/psychological resources, interpersonal/social skills, ADL/community living skills were deemed moderately impaired while plaintiff's vocational functioning skills were deemed seriously impaired. Id. at 504. Plaintiff scored a 10 on the Patient Health Questionnaire (PHQ-9), indicating moderate depression. Id. at 506.

On December 20, 2005, Plaintiff underwent a psychiatric evaluation at Triniatas. Id. at 494. On mental examination, Plaintiff had good eye contact, was cooperative and fully awake, and had no deficiencies in attention and concentration. Id. at 495. Plaintiff's mood was anxious, affect depressed, and thought process clear with no hallucinations. Id. Plaintiff's memory was intact, frustration tolerance good, impulse control fair, and insight and judgment full. Id. The psychiatrist diagnosed Plaintiff with major depressive disorder and reported a Global Assessment of Functioning (GAF) of 60. [ii] Id. at 495.

On January 16, 2006, at Trinitas, Plaintiff reported improvement in his depression. Id. at 493. Treatment notes from February 27, 2006 indicate that Plaintiff was irritable and felt like he was being followed. Id. at 168, 490. On June 29, 2006, Plaintiff reported he was feeling better with less depression. Plaintiff's sleep and appetite were good with mood, affect, and cognitive functioning generally intact. Id. at 169. On July 10, 2006, Plaintiff reported he was feeling better, less anxious and depressed, but was worried about medical problems. Id. at 168. On May 2007, Plaintiff was discharged from the Trinitas program because he stopped attending appointments. Id. at 174. Upon discharge, Plaintiff had a GAF of 60. Id.

On May 2, 2006, a state agency medical consultant reviewed the physical RFC assessment completed by a disability analyst. Id. at 159-165. The RFC assessment indicated that Plaintiff was capable of performing medium work as defined in the regulations. Id; see 20 C.F.R. § 416.967(c). The assessment further indicated that plaintiff's statement that he could not lift anything was not credible based on medical evidence. Id. at 163. The medical consultant noted that he had reviewed the record and opined that the disability analyst's assessment should be affirmed. Id. at 165.

On March 28, 2008, Plaintiff saw Dr. Andrew Kaufman for evaluation of his low back pain, which was rated 9/10 in severity. Id. at 316. Dr. Kaufman stated Plaintiff's pain was mildly alleviated with naproxen and Flexeril. Id. He reported that a lumbar MRI taken in September 2007 revealed a mild disc bulge at L3-4 with an annular tear and at L4-5 without evidence of canal compression. Id. It was also noted that Plaintiff was unable to heel or toe walk. Id. On April 7 and April 21, Plaintiff received a transforaminal injection at the L4-L5 level as part of a series of injections. Id. at 312. Plaintiff reported an 80 percent improvement in pain after the first injection. Id.

On May 15, 2009, Plaintiff reported to Trinitas where he reported daily moderate prostate pain. Id. at 471. On mental examination, Plaintiff was cooperative, with calm motor activity, depressed mood, and tearful affect. Id. at 478. He was fully oriented with thought content and processes normal. Id. The clinician assessed Plaintiff with a GAF of 40-85. [iii] Id. at 481. Plaintiff scored a 22 on the PHQ-9, which indicated severe depression. Id. at 482.

During a psychiatric evaluation at Trinitas on May 19, 2009, Plaintiff's mood and affect was depressed and anxious with fair mood and judgment. Id. at 470. The psychiatrist assessed a GAF of 40.[iv] At a psychiatric visit on May 27, 2009, Plaintiff was depressed with poor attentions span, concentration, insight, and judgment. Id. at 468. The psychiatrist assessed a GAF of 45. Id.

On June 2, 2009, Dr. Chu and Clinician Berta Burgos indicated that Plaintiff had been treated at Trinitas since May 18, 2009, for major depressive disorder. R. 284. Treatment notes from June 24, 2009 indicate that Plaintiff was feeling better and less anxious. Id. at 399. On June 25, 2009 the clinician noted Plaintiff was alert, involved, and less depressed at group therapy. Id. at 393. It was noted that during a therapy session, Plaintiff's mental status appeared less depressed and less anxious. Id. at 364. On July 17, 2009, Plaintiff reported improvement in his depressive mood, no anger, and decreased frustration and anxiety. Id. at 353, 356. Plaintiff's therapist also noted improvement in acute psychiatric symptoms; Plaintiff was discharged the same day. Id.

On October 6, 2009, Dr. Chu completed a medical assessment of Plaintiff's ability to perform work-related activities. Id. at 285-87. Dr. Chu assessed that Plaintiff had poor or no ability to follow work rules, relate to coworkers, deal with the public, use judgment, interact with supervisors, deal with work stress, function independently, and maintain attention or concentration. Id. at 285. Dr. Chu also reported that Plaintiff's had poor or no ability to maintain personal appearance, behave in an emotionally stable manner, relate predictably in social situations, or demonstrate reliability. Id. at 286. Dr. Chu's assessment was based on Plaintiff's history of epilepsy, prostate cancer, and gastroesophogal reflux disease. Id. at 287.

II.    LEGAL STANDARD

A.  Determining Disability

Pursuant to the Social Security Act, a claimant is required to show that he is disabled based on his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Taking into consideration age, education, and work experience, disability will be evaluated by the claimant's ability to engage in any form of substantial gainful activity existing in the national economy. Id. at § 423(d)(2)(A). If the individual can perform substantial gainful activity in the national economy, then he or she will not be considered disabled. Id. Each claimant's disability is determined individually based on evidence adduced at a hearing. See Sykes v. Apfel, 228 F.3d 259, 263 (3d Cir. 2000) (citing Heckler v. Campbell, 461 U.S. 458, 461 (1983)); 42 U.S.C. § 405(b)(1).

The Social Security Administration has developed a five-step sequential process set forth in the Code of Federal Regulations for evaluating the legitimacy of a plaintiff's disability. 20 C.F.R. § 404.1520. If it is determined that the claimant is disabled or not at any step, a decision is made and the evaluation will cease. Green v. Comm'r of Soc. Sec., Civil Action No. 11-2145, 2012 WL 1964462, at *2 (D.N.J. May 31, 2012). If a determination cannot be made at any step, the evaluation will continue to the next step. Id.

At step one, the plaintiff must establish that he is not currently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" is physical or mental work that is usually done for pay or profit. 20 C.F.R. § 404.1572. If the plaintiff is engaged in substantial gainful activity, the claim for disability benefits will be denied. 20 C.F.R. § 404.1520(a)(4)(i); see also Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1990)

(citing Bowen v. Yuckert, 482 U.S. 137, 140 (1987)).  At step two, if the plaintiff is not working, he must establish that he suffers from a severe impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the plaintiff fails to demonstrate a severe impairment, the ALJ must deny disability benefits.  Id.

If the plaintiff suffers a severe impairment, step three requires the ALJ to determine, based on the medical evidence, whether the impairment matches or is equivalent to a listed impairment found in the "Listing of Impairments" located in 20 C.F.R. § 404, Subpart P, Appendix 1 ("Appendix 1").  Id. at 404.1520(a)(4)(iii); see also Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 118 (3d Cir. 2000).  If the plaintiff's impairment does match a Listing, the plaintiff is considered disabled regardless of age, education, and work experience.  20 C.F.R. § 404.1520(d).  The Third Circuit has required that, in determining whether the plaintiff's impairments meet or equal any of the listed impairments, the ALJ identify relevant listed impairments, discuss the evidence, and explain his or her reasoning.  See Burnett, 220 F.3d at 119-20.  Conclusory statements at this step of the analysis are inadequate and render the decision "beyond meaningful judicial review."  Id. at 119.

If the plaintiff does not suffer from a listed severe impairment or an equivalent, the ALJ proceeds to step four where he or she must determine whether the plaintiff "can still do [his or her] past relevant work."  20 C.F.R. § 404.1520(a)(4)(iv).  Step four involves three substeps: "(1) the ALJ must make specific findings of fact as to the claimant's residual functional capacity; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the residual functional capacity to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work."  Burnett, 220 F.3d at 120.

The plaintiff "bears the burden of proof for steps one, two and four of [the five-step] test."  Sykes, 228 F.3d at 263.  Neither side bears the burden of proof in step three because "step three involves a conclusive presumption based on the listings."  Id. at 263 n.2 (citing Yuckert, 482 U.S. at 146-47 n.5))

If the plaintiff cannot perform the past work, the analysis proceeds to step five.  In this final step, the burden of production shifts to the Commissioner to determine whether there is any other work in the national economy that the plaintiff can perform.  20 C.F.R. § 404.1520(a)(4)(v); see also Sykes, 228 F.3d at 263.  In demonstrating that there is existing employment in the national economy that the plaintiff can perform, the ALJ can utilize the medical-vocational guidelines (the "grids") from Appendix 2 of the regulations, which consider age, physical ability, education, and work experience.  20 C.F.R. § 404, Subpt. P, App. 2.

However, when determining the availability of jobs for plaintiffs with exertional and non-exertional impairments,[v] "the government cannot satisfy its burden under the Act by reference to the grids alone," because the grids only identify "unskilled jobs in the national economy for claimants with exertional impairments who fit the criteria of the rule at the various functional levels."  Sykes, 228 F.3d at 269-70.  Instead, the Commissioner must utilize testimony of a "vocational expert or other similar evidence, such as learned treatise," to establish whether the plaintiff's non-exertional limitations diminish his residual functional capacity and ability to perform any job in the nation.  Id. at 273; see also Burnett, 220 F.3d at 126 ("A step five analysis can be quite fact specific, involving more than simply applying the Grids, including . . . testimony of a vocational expert.").  If this evidence establishes that there is work that the plaintiff can perform, then the plaintiff is not disabled.  20 C.F.R. § 404.1520(a)(4)(v).

B.  Standard of Review

"Substantial evidence" is the standard of proof when evaluating social security appeals regarding disability.  The Court must affirm the ALJ's decision if it is supported by substantial evidence.  Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000).  See also 42 U.S.C. § 405(g).  Substantial evidence is "more than a mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  The court has a duty to review the evidence in its totality and decide whether the ALJ's determination was reasonable.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir.1984). The court gives deference to the administrative findings and decision, but it must also "scrutinize the record as a whole to determine whether the conclusions reached are rational" and substantially supported by the evidence.  See Gober v. Matthews, 574 F.2d 772, 776 (3d Cir.1978). The court, however, is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder."  Sullivan, 970 F.2d at 1182.  To assist the court in this process, an ALJ must explain the rationale behind his decision; and where there is conflicting medical evidence, the ALJ must adequately explain in the record his reasons for rejecting competent evidence.  Brewster v. Heckler, 786 F.2d 581, 585 (3d Cir.1986).  An ALJ may reject testimony of subjective complaints where it is not consistent with the medical evidence.  See, e.g., Burns v. Barnhart, 312 F.3d 113, 130–31 (3d Cir. 2002).

In determining whether there is substantial evidence to support the decision, the reviewing court must consider the following: "(1) objective medical facts; (2) diagnoses and medical opinions of examining physicians; (3) subjective evidence of pain and disability as described by claimant and corroborated by others who have observed her; and (4) claimant's age, education background and work history." Curtain v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981). If a medical opinion is consistent with other substantial evidence, it is given controlling weight.  20 C.F.R. §§ 416.927(c)(1), (d)(2).  However, if medical opinions are inconsistent with other evidence, the Commissioner must weigh all the evidence to determine if the claimant is disabled.  20 C.F.R. § 416.927(c)(2).

III.   DISCUSSION

A.  Summary of the ALJ's Findings

The ALJ concluded that Plaintiff was not disabled prior to November 1, 2009, but became disabled on that date and has continued to be disabled thereafter.  R. 236.  At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date of disability, February 18, 2005.  Id. at 238.  At step two, the ALJ found that since the alleged onset date, the claimant has had the following severe impairments: a history of hernias, back disorders, and depression.  Id.

At step three, the ALJ found that since the alleged onset date, the claimant has not had an impairment or combination of impairments that meets or is medically equivalent to one of the listed impairments in Appendix 1.  Id. at 240.  The ALJ stated that particular consideration was given to the listings in sections 1.00 and 12.00 for the musculoskeletal system and mental disorders respectively.  Id.

At step four, the ALJ used a two-step process to determine that Plaintiff had the RFC to perform a wide range of medium work as defined in 20 C.F.R. § 416.967(c).  Id. at 241. Specifically, Plaintiff was able to lift and/or carry 25 pounds frequently and 50 pounds

occasionally; perform unlimited pushing and pulling within the weight restriction noted; sit for a total of six hours; and stand and/or walk for a total of six hours.  Id.  In making her determination, the ALJ first found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms.  Id.  Second, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible prior to November 1, 2009, to the extent that they are inconsistent with the RFC assessment.  Id. at 241-42.  The ALJ stated there was no evidence prior to the independent exam in April 2010 that reflected that the Plaintiff could not perform medium work.  Id. at 242.  The ALJ found that the internal exam from 2005 found no significant limitations and there were no treatment records indicating that Plaintiff was completely disabled.  Id.

Additionally, the ALJ noted that although Plaintiff alleged disabling back pain, the record demonstrated no objective findings of any significant back impairment until March of 2008.  Id.  Likewise, the ALJ stated that although Plaintiff's record noted a history of hernias, there is no evidence demonstrating that the hernias or repair of the hernias have resulted in debilitating limitations.  Id.  Considering Plaintiff's depression, the ALJ found that the only limitation caused by Plaintiff's depression is that he is unable to perform skilled or semi-skilled work and that Plaintiff is fully able to perform simple, unskilled, repetitive work.  Id.

The ALJ found that prior to November 1, 2009, Plaintiff was capable of performing past relevant work as a loader, which did not require the performance of work-related activities precluded by Plaintiff's residual functional capacity.  Id.  The ALJ compared Plaintiff's RFC with the physical and mental demands of a loader and found that Plaintiff was able to perform the work generally.  Id. at 243.  Further, the VE testified that Plaintiff's work as a loader, performed in the national and regional economies, is performed at the medium exertional level and is unskilled.  Id.

The ALJ found that, beginning on November 1, 2009, the day plaintiff became disabled, Plaintiff's RFC allowed him to perform a full range of light work.  Id. at 242.  The ALJ found plaintiff's allegations regarding his symptoms and limitations from November 1, 2009 and thereafter generally credible.  Id. at 242.  The ALJ gave Plaintiff the benefit of the doubt, finding that although Plaintiff's limitations were noted on an independent exam on April 21, 2010, it would be reasonable to assume that the noted limitations would have existed at least six months prior to the April 2010 exam.  Id.  Accordingly, the ALJ found that beginning on November 1, 2009, Plaintiff's RFC prevented Plaintiff from being able to perform past relevant work because loaders must perform work at the medium exertional level inasmuch as Plaintiff developed back pain and additional limitations.  Id.

At step five, considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that since November 1, 2009, there are no jobs that exist in significant numbers in the national economy that Plaintiff can perform.  Id. at 243.  The ALJ held that Plaintiff had been disabled under 1615(a)(3)(A) of the Social Security Act beginning on November 1, 2009, but not prior to that date.  Id. at 244.

B.  Analysis

Plaintiff argues that the ALJ erred at the second, third, and fourth steps of the sequential evaluation.  Plaintiff additionally contends that the ALJ's RFC determination is not based on substantial evidence.  This Court agrees with plaintiff in part.  The ALJ properly conducted steps two and four where her decision was supported by substantial evidence; however, the ALJ failed to adequately compare defendant's impairments with the listings in Appendix 1 at step three of the evaluation.

1. *Step two- The ALJ properly relied on objective medical evidence in the record to determine Plaintiff's severity.*

At the second step, Plaintiff asserts that the ALJ found no limitations that would justify labeling Plaintiff's hernias as "severe."  Plaintiff's Br. 9, 10 ("Pl.'s Br.").  Although Plaintiff's argument is contrary to his interests,[vi] it nonetheless fails.  If the evidence presented by the claimant presents more than a "slight abnormality," the severe requirement is met.  Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 547 (3d Cir. 2003); see also 20 C.F.R. § 416.920(c) (stating that an ALJ must only find that an impairment causes more than a minimal effect on a claimant's ability to perform basic work activities in order to justify finding an impairment severe at step two).  The ALJ averred that that since the alleged onset date of disability, "the claimant has had the following severe impairments: a history of hernias, back disorders, and depression."  R. 238.

The ALJ adequately referred to objective medical evidence from the record to support her conclusion that Plaintiff's hernias were severe.  R. 238-40.  Particularly, the ALJ noted Plaintiff's visit with Dr. Lathan, who averred plaintiff had moderate restrictions for bending, lifting, carrying, pushing, and pulling after taking into account plaintiff's history of hernias.[vii] Id. at 138, 238.  Although the ALJ's decision does not explicitly note these restrictions in the decision, the ALJ nonetheless referred to Plaintiff's visit with Dr. Lathan.  Id. at 238.  The Court finds this sufficient to satisfy a step-two inquiry.  See Newell 347 F.3d at 547 (noting that the step two inquiry is a *de minimus* screening designed to dispose groundless claims); see also Jakubowski v. Comm'r of Soc. Sec., 131 Fed. Appx. 341, 343 (3d Cir. 2005) ("[S]tep two should rarely be the stage at which an applicant's claim is rejected."); McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 361 (3d Cir. 2004) ("[B]ecause step two is to be rarely utilized as a basis for the denial of benefits, its invocation is certain to raise a judicial eyebrow.).

2. *Step three- The ALJ failed to adequately compare the Plaintiff's severe impairments with the Commissioner's listings to determine medical equivalence.*

At the third step, Plaintiff argues that the ALJ erred by failing to compare the combination of Plaintiff's severe impairments with the Commissioner's listings to determine medical equivalence.  Pl.'s Br. 11.  Plaintiff contends that the ALJ did not give consideration to the listings in section 1.00 (musculoskeletal system) and 12.00 (mental disorders) of Appendix 1.  Plaintiff states that the ALJ did not identify the specific nature of plaintiff's "back disorders" and never revealed which orthopedic listing was used for comparison against plaintiff's diagnosed lumbar radiculopathy.  Id.  Further, Plaintiff contends that the ALJ erred by not revealing which psychiatric listing was used for comparison.  Id.  Particularly, Plaintiff argues that the ALJ's decision did not (1) mention Listing 12.04; (2) reveal the evidentiary source of ALJ's "B" paragraph analysis, and (3) discuss the "paragraph C criteria" and why Plaintiff was found not to satisfy the criteria.  Id.  The Court agrees in part.

The ALJ concluded that the claimant did not have an impairment or a combination of impairments that met or was medically equivalent to a listed impairment.  R. 240.  An ALJ's finding that a claimant's impairments do not meet or equal any listed impairment without identifying the relevant listed impairments, discussing the evidence, or explaining the reasoning constitutes an error requiring remand.  See Burnett, 220 F.3d at 119.  The ALJ may

not "merely state[] a summary conclusion that appellant's impairments did not meet or equal any Listed Impairment." Id. at 119 (quoting Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir. 1996). The Third Circuit has adopted a flexible approach in determining whether an ALJ has discharged his or her step-three duty: The ALJ is not required "to use particular language or adhere to a particular format" in conducting his analysis, Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004), but there nevertheless must be "sufficient development of the record and explanation of findings to permit meaningful judicial review." Garrett v. Commissioner of Social Sec., 274 Fed. Appx. 159 (3d Cir. 2008) (citing Jones, 364 F.3d at 505 (3d Cir. 2004)); White v. Astrue, Slip Copy, No. 10-506, 2011 WL 463058, *9 (D.N.J. Feb. 3, 2011).

Accordingly, this Court finds that the ALJ erred by failing to provide an explanation for her findings pertaining to section 1.00 of the listed impairments. The ALJ omitted altogether any discussion regarding whether Plaintiff's back impairment or combination thereof meets or medically equals the said section. Although the ALJ acknowledges that "[c]onsideration was given to the listings in section[] 1.00," without more, the Court finds this to be inadequate for meaningful judicial review. See Fargnoli v. Massanari, 247 F.3d 34, n. 4 (3d Cir. 2001) ("[W]e note that this Court requires more than just a conclusory statement that a claimant does not meet the listings.")

We do not agree with the plaintiff that the ALJ erred by failing to explicitly refer to a specific subsection, particularly 12.04 as asserted. We find the ALJ's reference to section 12.00 in whole to be sufficient. See Scatorchia v. Comm'r of Soc. Sec., 137 Fed. Appx. 468. 470-71 (3d Cir. 2005) (noting that step-three may be satisfied under Jones where an ALJ evaluates medical evidence in the record despite not identifying most relevant Listing). Moreover, an ALJ is not required to identify a specified listing provided that the ALJ adequately discusses all relevant medical evidence. Lopez v. Comm'r of Soc. Sec., 270 Fed. Appx. 119, 121 (3d Cir. 2008).

Furthermore, the ALJ met her burden in discussing Plaintiff's failure to meet the paragraph "B" criteria for mental disorders under Section 12.00 of Appendix 1; the ALJ specifically noted Plaintiff had "no restriction in activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace" pursuant to paragraph B.[viii] R. 240. However, we agree with Plaintiff that the ALJ failed to adequately discuss the paragraph "C" criteria in regard to section 12.00. The ALJ merely states in her decision, "The claimant's mental impairment(s) does not satisfy the paragraph "C" criteria of the applicable mental disorder listing(s)." R. 240-41 at ¶ 3.

Defendant cites Astrue in opposition where the District Court noted that step-three determinations finding a claimant not presumptively disabled have been upheld "based upon a less than detailed analysis of the combined impairments." Astrue, 2011 WL 463058 at *9. Although true, defendants ignore that this may apply only "as long as the rest of the Step Three analysis, including that of the individual impairments, *was detailed [and] there was some consideration of the combined impairments*." Id. (emphasis added). Nowhere in the ALJ's step three-analysis is there reference to a combination of Plaintiff's severe impairments, which include a history of hernias, back disorders, and depression. See id. ("There is no way to review the ALJ's decision . . . because no reasons were given for his conclusion that [Plaintiff's] impairments in combination did not meet or equal an Appendix 1 listing."); see also Torres v. Comm'r of Soc. Sec., 279 Fed. Appx. 149 (3d Cir. 2008) (remanding case where ALJ failed to combine claimant's medical impairments and compare them to analogous listings despite ALJ explaining why claimant's impairments did not meet any listing individually).

Accordingly, this Court remands the case for a discussion of the evidence, and specifically, an explanation to support a determination that Plaintiff's impairment does not

meet or is not equivalent to section 1.00 of the listed impairments and why Plaintiff's mental impairments do not satisfy paragraph "C" of section 12.00.

        3.   *Step four—ALJ relied on substantial evidence in determining Plaintiff's residual functioning capacity.*

Plaintiff contends that the ALJ erred in finding Plaintiff capable of performing "medium work" prior to November 1, 2009, which entails lifting and/or carrying 25 pounds frequently and 50 pounds occasionally. Pl.'s Br. 10. Plaintiff argues that because the ALJ found Plaintiff's hernias to be severe, the ALJ must necessarily find some limitation in lifting and carrying, or at the least, provide an explanation as to either why the hernias impose no limitations or why the ALJ believes the plaintiff retains the ability to carry 25-30 pounds despite suffering from "severe" hernias. Id. The Court finds that because the ALJ relied on substantial evidence, she did not err in making her RFC determination.

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Smith v. Comm'r of Soc. Sec., 80 Fed. Appx. 268, 270 (3d Cir. 2003). The ALJ properly relied on both the RFC assessment, which indicated Plaintiff could perform medium work, and Dr. Lim, who indicated that Plaintiff had no limitations for lifting, carrying, or pushing. R. 139-45, 159-65. See Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011) (finding ALJ was entitled to rely on state agency medical consultant's RFC assessment). Moreover, the ALJ stated that although the claimant's record noted a history of hernias, no evidence exists in the record to demonstrate that these hernias, or the repairs thereof, have resulted in debilitating limitations that would limit Plaintiff any further. R. 242.

Plaintiff contends that "[o]ne need not have the credentials of a physician to realize that recurring hernias present a limitation in safely lifting and carrying considerable weight." However, regardless of how prudent Plaintiff's assertion may appear to be, or actually be, an ALJ is not in the position to make a medical determination without support: An ALJ may not reject the opinion of a treating physician based on his or her credibility judgments, lay opinion, or speculation stemming from medical reports. See Morales v. Apfel, 225 F.3d 310, 317-18 (3d Cir. 2000) (citing Plummer, 186 F.3d at 429)); see also Adorno v. Shalala, 40 F.3d 43, 47 (3d Cir. 1994) ("In considering a claim for disability benefits, greater weight should be given to the findings of a treating physician. . . ."). Therefore, because Plaintiff neither gives nor directs the court to any objective medical evidence in the record to corroborate his conclusory statement, this Court will not consider it further.

Plaintiff further asserts that the ALJ erred when she concluded that Plaintiff had no work-related limitations stemming from Plaintiff's severe depression other than preventing Plaintiff from doing skilled or semi-skilled work. Pl.'s Br. 10; R. 242. Plaintiff argues, to the same effect, that his severe depression necessitates a greater limitation than that determined by the ALJ. Pl's Br. 11. We find no error here as the ALJ's determination is supported by substantial evidence.

The ALJ noted Plaintiff's medical history pertaining to his depression throughout the 9-page decision. R. 238-43. Particularly, the ALJ stated that based upon a complete view of the record, there is no evidence that "claimant is unable to understand, carry out and remember the simple instructions associated with simple, unskilled, repetitive work. Id. at 242. The ALJ stated that Plaintiff had no difficulty interacting with supervisors, co-workers, or the general public. Id. Moreover, Plaintiff again provides no objective medical evidence to corroborate his challenge to the ALJ's decision. Even with Plaintiff's severe depression, Plaintiff may nonetheless have the capacity to perform medium work. See Green v. Comm'r

of Soc. Sec., 266 Fed. Appx. 125, 128 (3d Cir. 2008) (indicating that severe impairments do not necessarily preclude medium work); see also Tyminska v. Soc. Sec. Admin., 313 Fed. Appx. 477 (3d Cir. 2008) ("affirming ALJ's determination that although Plaintiff had depressive disorder that restricted basic work functions, plaintiff had the RFC at medium exertional level."). Thus, substantial evidence supports the ALJ's determination that Plaintiff had the RFC to perform medium work activity during the period in question.

Moreover, contrary to Plaintiff's assertions, the ALJ properly addressed Plaintiff's spinal stenosis and radiculopathy in making her RFC determination. The ALJ averred that the record shows no objective findings of significant back impairment until March of 2008. Id. 242. And even with the findings of a herniated disc with radiculopathy, Plaintiff's condition was noted to be improving. Id. 242. Thus, the ALJ's reasoning was specific and based on substantial evidence in the record. See Smith v. Comm'r of Soc. Sec., 80 Fed. Appx. 268 (3d Cir. 2003) (finding ALJ to properly discount Plaintiff's subjective statements where statements were reasonable, specific, and based on the evidence).

4. *Step four- The ALJ properly found that residual functional capacity allows plaintiff to perform past relevant work.*

During the supplemental hearing before the ALJ on October 21, 2009, the VE testified that Plaintiff had past relevant work as a loader and general construction worker. R. 551, 553. According to the record, Plaintiff lifted over fifty pounds while working for each job, which places them in the heavy exertional range as they were actually performed. Id. at 552. The VE testified, however, that both these jobs exist at the unskilled and medium exertional level in the national and regional economy. Id. 551, 553-54. After comparing Plaintiff's RFC with the physical and mental demands of Plaintiff's previous work as a loader, the ALJ found that prior to November 1, 2009, Plaintiff was capable of performing past relevant work as it is generally performed. [ix] Id. at 243.

Plaintiff argues that the ALJ erroneously concluded Plaintiff was capable of performing past relevant work for the sole purpose of avoiding step five of the sequential analysis. Pl.'s Br. at 14. By denying disability at step four, as Plaintiff contends, the ALJ was able to avoid the VE's testimony and therefore erred. Id. Specifically, Plaintiff contends that the ALJ omitted the VE's testimony stating that plaintiff's past work was heavy as performed. Id. The Court discerns no error and finds the ALJ's determination to be supported by substantial evidence.

Although the ALJ found Plaintiff's past relevant work to entail heavy work activity, Plaintiff's argument fails to distinguish between past relevant work as actually performed opposed to past relevant work as generally performed in the national economy. See Garibay v. Comm'r of Soc. Sec., 336 Fed. Appx. 152, 159 (3d Cir. 2009) (affirming Commissioner's denial of disability insurance benefits where court found plaintiff had RFC to perform past relevant work as it is generally performed but not as the work was actually performed). A claimant will be found "not disabled" if "the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy." S.S.R. 82-61. In the instant case, although the ALJ found Plaintiff's past relevant work as a loader was actually performed at the heavy level, similar loading jobs were generally performed and available at the medium to heavy level. R. 553-54. Additionally, the VE stated that Plaintiff's past relevant work as a general construction worker was also performed at the medium to heavy level in the national economy. [x] Id. at 553. See S.S.R. 82-61 ("[I]f the claimant cannot perform the excessive functional demands

11

and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be 'not disabled.'"); see also Diaz v. Comm'r of Soc. Sec., No. 09-6471, 2010 WL 3943707, *5 (D.N.J. Oct. 6, 2010) (holding that the ALJ properly found plaintiff could perform past relevant work in the general economy based on testimony of the vocational expert), aff'd, 440 Fed. Appx. 70 (3d Cir. 2011).  Accordingly, we find the ALJ did not err in concluding that Plaintiff could return to past relevant work.

IV.     CONCLUSION

The Court finds, for the reasons discussed above, that the ALJ did not adequately explain why Plaintiff's impairments did not meet or equal section 1.00 and section 12.00 paragraph "C" of the listed impairments.  The decision of the ALJ is hereby remanded for further discussion.  An appropriate order accompanies this Opinion.

DATED: August 7, 2012                          s/ Jose L. Linares_____
                                               JOSE L. LINARES,
                                               UNITED STATES DISTRICT JUDGE

---

[i] "R." refers to pages of the Administrative Record – SSA.  As of the date of this opinion, the Administrative Record is currently not available on the Electronic Document Filing System, CM/ECF.

[ii] A GAF is a scale from 0 to 100 that may be used to report the clinician's judgment of the individual's overall symptom severity and the level of his or her functioning.  A GAF of 51 to 60 indicates moderate symptoms or moderate difficulty in social, occupational or school functioning.  A GAF of 61-70 indicates some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally is functioning pretty well, and has some meaningful interpersonal relationships.  Diagnostic and Statistical Manual of Mnetal Dissorders ("DSM-IV-TR") 34 (4th ed., rev. 2000).

iii A GAF score of 41-50 indicates serious symptoms (e.g., suicidal ideation severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning.  DSM-IV-TR at 34.

iv A GAF score of 31-40 indicates some impairment in reality testing or communication or major impairment in several areas such as work or school, family relations, judgment, thinking, or mood. DSM-IV-TR at 34.

v Under the Code of Federal Regulations, impairments can be either exertional or non-exertional. Exertional impairments affect the plaintiff's "ability to meet the strength demands of jobs" in terms of "sitting, standing, walking, lifting, carrying, pushing, and pulling."  20 C.F.R. § 404.1569a.  All other impairments are considered non-exertional.  Id.; see also Sykes, 228 F.3d at 263.

vi "If a claimant is unable to show that he has a medically severe impairment, he is not eligible for benefits. . . ."  Bowen v. Yuckert, 482 U.S. 137, 138 (1987).\

vii Pursuant to the Employees' Benefits regulations, an impairment is not severe if it does not significantly limit physical or mental ability to perform basic work activities.  Basic work activities are "abilities and aptitudes necessary to do most jobs," including the following:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
(2) Capacities for seeing, hearing, and speaking;
(3) Understanding, carrying out, and remembering simple instructions;
(4) Use of judgment;
(5) Responding appropriately to supervision, co-workers and usual work situations; and
(6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521

viii Paragraph B of section 12.04 requires that the claimant's mental impairment result in at least two of the following: (1) Marked restriction of activities of daily living; (2) Marked difficulties in maintaining social functioning; (3) Marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decomposition, each of extended duration.  20 C.F.R. Pt. 404, Subpt. P, App. 1, Section 12.04(B)

ix There are three possible tests for determining whether or not a claimant retains the capacity to perform his or her past relevant work:

(1) "Whether the claimant retains the capacity to perform a past relevant job based on a broad generic, occupational classification of that job, e.g., 'delivery job,' 'packaging job,' etc."
(2) "Whether the claimant retains the capacity to perform the particular functional demands and job duties peculiar to an individual as he or she actually performed it," and
(3) "Whether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy."

S.S.R. 82-61.

x A vocational expert's testimony is not required, but may nevertheless be used in making a determination because such an expert  "may offer relevant evidence ... concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy."  20 C.F.R. § 404.1560(b)(2).